CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 31 2008

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES R. CROY,<br>　　Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:07cv138<br>)<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>　　Defendant. | ) By: Hon. Michael F. Urbanski<br>)　　United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Charles R. Croy ("Croy") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision to terminate his disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383 ("Act").

Croy was awarded disability benefits effective November 1, 1996, due to cataracts in both eyes, and following cataract surgery and improvement in Croy's vision, the Commissioner determined that Croy's visual impairment no longer constituted a disability and found him no longer eligible for benefits effective November 30, 2001. That determination was upheld on reconsideration and an Administrative Law Judge ("ALJ") held a hearing on January 4, 2006, at which time Croy appeared and testified. On April 20, 2006, the ALJ issued a decision finding that disability ceased on September 1, 2001, and that Croy's entitlement to benefits ceased as of November 30, 2001. The Appeals Council denied Croy's request for review on July 26, 2006, rendering the decision final. This appeal followed.

The Commissioner has filed a motion for summary judgment, and Croy has filed a motion for remand. Having reviewed the administrative record, and after briefing and oral

argument, the decision of the Administrative Law Judge ("ALJ") is affirmed as Croy has not met his burden of establishing that he is disabled under the Act.

### I.

The court may neither undertake a de novo review of the Commissioner's decision nor reweigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

### II.

Croy was born on February 12, 1951 and attended school through the eighth grade. He was unable to obtain his GED. (Administrative Record [hereinafter "R."] at 36) Croy worked as a heavy iron worker/construction laborer, and material handler. (R. 45-46, 54-55) The issue in this case is narrow as Croy concedes that due to his successful cataract surgeries, he no longer meets the listing for statutory blindness. Rather, the issue in this case is whether the Commissioner properly evaluated Croy's claimed mental impairment.

2

Croy argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly develop the record as to Croy's mental state, including the effects of his depression and alcohol use on his ability to work. Croy bases his argument on a memorandum dated February 4, 2004 and authored by Hillel Raclaw, Ph.D., an official with the Social Security Administration's "Office of Disability Office of Medical Evaluation" in which Dr. Raclaw recommended that Croy's claimed impairment involving his "nerves," including diagnoses of alcohol dependence and depression, receive "further development." (R. 291) In particular, Dr. Raclaw recommends to "[c]ontact the treating physician and request comment pertinent to the claimant's dependence on Alcohol and his Depression. Contact the claimant and inquire if he has been involved in any mental health treatment program. The file requires objective data regarding the claimant's depression and any cognitive effects of Alcohol Dependence." (R. 291) Based on this memorandum, Croy seeks a remand for further development of his psychological impairments.

The Commissioner argues that no further evaluation of Croy's psychological state is necessary as nothing in the notes of any of Croy's treating or examining physicians suggests that his depression and alcohol dependence were anywhere near a disabling level. On the contrary, the Commissioner argues that the medical records from Drs. Thad C. Lee, Croy's primary care treating physician, and Drs. Chris Newell and Richard L. Wilson, who performed consultative examinations on Croy, do not support a finding of disability and provide substantial evidence to support the Commissioner's decision. Indeed, following Croy's cataract surgery, no examining or treating physician has opined that Croy is disabled. After reviewing the administrative transcript, considering the briefs and oral argument, and considering the standard of review in social security disability appeals, the decision of the Commissioner is affirmed.

3

## III.

Since 1996, Croy was eligible for disability benefits due to vision problems caused by cataracts. In late 1997, Croy had successful cataract removal surgery. (R. 275-77) On September 7, 2001, Croy's eye surgeon, Dr. Glenn K. Davis II, wrote the state disability agency and advised that "[w]ith the vison that he has I do not feel that he would be disabled from an ocular standpoint." (R. 263) On April 2, 2002, the Commissioner notified Croy that he was no longer disabled and that his benefits were being terminated effective November 30, 2001. Croy appealed this determination, and the Commissioner ultimately concluded that the decision to terminate Croy's disability benefits was correct. Croy has filed this action seeking judicial review of that decision.

Shortly before his disability benefits were terminated, on September 17, 2001, Croy was seen by his primary care physician, Dr. Thad C. Lee, complaining of stomach problems, losing weight and dizziness. Dr. Lee's note described Croy as "a fairly reclusive alcoholic. He seems moderately mentally alert and reasonably bright." (R. 239) On physical examination, Dr. Lee described Croy as "tall, thin, depressed." (R. 240) As regards mental status, Dr. Lee was unsure about Croy's judgment or insight, but felt it was "certainly limited as to alcohol." (R. 241) Dr. Lee noted that Croy was depressed but his memory was alright as to the interview. Dr. Lee commented that "[h]e is alert, oriented and in no distress. He sits alert with great eye contact." (R. 241) Dr. Lee started Croy on an antidepressant.

Dr. Lee saw Croy in follow-up a month later on October 9, 2001 and noted that the antidepressant had helped, although his mood and affect remained a bit flat. (R. 237) Dr. Lee referred Croy to Dr. Kerry Donnelly, an orthopedic surgeon, for chronic bursitis in his right elbow, which Dr. Donnelly treated by performing a few surgical procedures.

4

Dr. Lee saw Croy again on March 8, 2002 at which time he reported that he was "doing pretty good emotionally – states meds have helped a lot – he is aware dangers mixing drugs with alcohol." (R. 231) Dr. Lee's notes reflected that Croy "[d]enies depression, anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, paranoia." (R. 232) Despite his improvement, Dr. Lee continued to describe Croy's affect as "flat" and noted that he smelled of alcohol. (R. 232) The medical records do not reflect any further treatment rendered Croy by Dr. Lee.

Croy was examined by a state agency physician on November 14, 2003, at which time Dr. Chris Newell reported that "[h]e had normal mental status." (R. 279) Dr. Newell noted a history of depression and anxiety among other ailments[1], and noted that he was taking an antidepressant. Regardless, Dr. Newell's functional assessment does not list any vocational limitation associated with depression or anxiety. (R. 280-81)

Shortly before the administrative hearing, Croy's counsel moved for a consultative examination, stating that due to his lack of funds, Croy had not seen a doctor since 2004. (R. 155) This request was repeated at the hearing conducted on January 4, 2006. (R. 34) As described by his counsel, Croy's complaints were emphysema, breathing, bouts of anxiety and depression, problems sitting and lifting more than 10 pounds and difficulties reading and writing. (R. 34) The ALJ set up a consultative examination for Croy with Dr. Richard L. Wilson, Jr., which was conducted on February 20, 2006.

In his examination report, Dr. Wilson noted that "Croy is alert and oriented in no apparent stress. He moves easily his extremities. He does not require any devices for

---

[1] The medical records reflect that in 2004 Croy had pulmonary tests and an arterial scan, but Croy does not argue, nor do the test results themselves suggest, that they demonstrate any functional limitations. (R. 284-85, 287-90, 294-95, 296-302, 303-04)

5

ambulation or movement. I would describe him as rather spry actually." (R. 311) Dr. Wilson noted full range of motion, strength, reflexes and sensation, and described his COPD as "early" and his emphysema as "relatively minor." (R. 311-12) With regard to anxiety and depression, Dr. Wilson noted that "[h]e believes he has posttraumatic stress disorder. I asked him exactly what posttraumatic stress he was suffering from and he does not know what trauma it might have been but he is sure that he has it. His qualification for that is that, 'I don't feel good a lot of the time.'" (R. 310) Dr. Wilson noted that Croy had not been seen by Dr. Lee since 2004 because he is uninsured, (R. 310), but noted that Croy recently had been prescribed certain medications, including those for anxiety and depression, by the Montgomery County Free Clinic. (R. 310) Dr. Wilson concluded that "[i]t is my opinion that Mr. Croy has the ability to perform at any job that he would be so motivated to attempt. Certainly, vision correction would help a lot with this but that is certainly a correctable disability as such it is not a disability. I would not release Mr. Croy to heavy-duty work such as a firefighter or steelworker but pretty much anything below. I believe that he has physical capacity to perform if he were so motivated." (R. 312)

The ALJ issued his decision on April 20, 2006, concluding that Croy's disability ceased on September 1, 2001, that date determined based on the September 7, 2001 assessment of Dr. Davis, Croy's eye surgeon. The ALJ reviewed the medical records, including those of treating Drs. Lee and Donnelly and the medical examinations of Drs. Newell and Wilson. The ALJ's decision states that "[t]he record shows claimant had normal physical examinations and diagnostic studies were negative except for evidence of mild emphysema. Claimant's allegations of functional loss are also undermined by the lack of any intensive or extensive treatment." (R. 18) Based on his review of the record, the ALJ concluded that Croy's breathing impairment would restrict him to the medium level of physical exertion and that his poor vision

6

would improve with corrective lenses. The ALJ found no severe mental impairment. A vocational expert testified at the administrative hearing that based on Croy's past semi-skilled work, he had transferable skills at the medium exertional level. Considering all of this evidence, the ALJ applied the Medical-Vocational Guidelines and concluded that Croy retained the capacity to adjust to work that exists in significant numbers in the national economy and was no longer under a disability as defined in the Act.

### IV.

The Act places the burden of proof on the individual who is seeking benefits, stating that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). Applicable regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a); see also Reichenbach v. Heckler, 808 F.2d 309, 311 (4th Cir. 1985).

Significantly, the record contains no opinion from any physician that Croy was disabled from all work after his cataract surgery. None of his treating physicians opined that he was totally disabled, and neither of the examining consulting physicians found him disabled as well. The ALJ responded to the argument made by Croy's lawyer that he had not been seen by a physician for a couple of years before the administrative hearing and ordered a consultative examination. Dr. Wilson's subsequent consultative examination does not support a finding of disability, and the ALJ was well justified in relying on it and the remainder of the medical records in concluding that Croy did not meet his burden of establishing disability.

Croy argues nonetheless that the ALJ did not fully evaluate Croy's mental status, either by contacting Croy's treating physician, Dr. Lee, as mentioned in the February 4, 2004

7

memorandum by Dr. Raclaw in the Office of Medical Evaluation, (R. 291), or by obtaining a consultative psychological assessment. To be sure, Dr. Raclaw's memorandum states that Croy complains of problems with "nerves," his medical records note diagnoses of depression and alcohol dependence and that he was prescribed psychoactive medication, and recommends further development of Croy's allegations in terms of contacting the treating physician for comment and contacting the claimant regarding whether he had been involved in any mental health treatment. (R. 291). The memorandum concludes that "[t]he file requires objective data regarding the claimant's depression and any cognitive effects of Alcohol Dependence." (R. 291)

Nearly six months following this recommendation, on July 28, 2004, Croy had a hearing before a Social Security Disability Hearing Officer who took testimony from Croy concerning his physical and mental limitations. The Hearing Officer summarized Croy's testimony regarding his mental condition as follows:

> He stated that he takes Zoloft for his nerves. He is not in any mental health treatment and receives this medication from his family doctor. He stated that this medication helps him to feel more at ease. He indicated that he has problems being around people and prefers to stay to himself. He denied the overuse of alcohol and stated that he just drinks a few beers on occasion. He went on to state that he also gets occasional panic attacks that frequently occur at night.
>
> The claimant stated that he lives alone in a 2 room apartment. He indicated that he is able to take care of all his daily activities and stated that the only thing he really needed help with was to get a ride to do his grocery shopping. He stated that he did no really hang out with many people and preferred to stay to himself.

(R. 123) The disability hearing officer assessed the claimed mental impairment as follows:

> In the hearing the claimant was noted to interact well with the hearing officer who was a stranger to him. He did appear just a touch uneasy but was personable and respectful. It should be noted that the claimant did appear to have the odor of alcohol on and about his person. He was specifically asked about this and he

> denied that he has been drinking that morning. His hearing was
> scheduled for 11 a.m.
>
> There does not appear to be any significant limitations due to a
> mental impairment. His activities of daily living are not
> significantly compromised. The claimant does not appear to have
> any significant limitations due to a physical or mental impairment.

(R. 124) In short, it appears from these entries that the disability hearing officer asked Croy about the very concerns raised by Dr. Raclaw.

> Further, the ALJ considered the claimed mental impairment further, as follows:
>
> The record shows claimant was prescribed an antidepressant
> briefly for complaints of emotional difficulties; however, the
> record fails to document any significant limitations of functioning
> due to a mental impairment and the treating physician noted that
> alcohol dependence was contributing to his limited judgment and
> insight. It is also noted that no treating or examining physician has
> referred claimant to a mental health specialist.

(R. 19) Following the hearing, the ALJ set up a examination for Croy by a consulting physician, Dr. Wilson, who obviously spoke with Croy concerning his claimed depression and anxiety, but did not find that Croy had any functional impairments associated with his mental health status.

Dr. Wilson's examination is consistent with that of Croy's treating primary care physician, Dr. Lee, who never recommended that Croy be seen by a psychologist or psychiatrist or other specialist for his depression and anxiety, nor did he recommend any inpatient treatment. Croy was prescribed anxiety and depression medications on an outpatient basis and indicated improvement in his condition when he was compliant with the prescribed medications. None of the physicians who treated Croy authored any note which remotely suggests that Croy's mental status would cause any functional limitation in his ability to work, (R. 231-47), and neither of the examining consulting physicians considered him to have any mental impairment as well.

9

(R.278-81, 310-12) Under these circumstances, the decision of the ALJ is plainly supported by substantial evidence.

Croy argues that the ALJ should have sought further information from Dr. Lee or obtained a consultative psychological evaluation in addition to the assessment done by Dr. Wilson, and the case should be remanded for such purpose. Given the clarity of Dr. Lee's records as regards the minimal nature of Croy's psychological complaints and the improvement in Croy's condition from the medications prescribed by Dr. Lee, there does not appear to be any reason to seek any further clarification from Dr. Lee. In this regard, the regulations provide that "[w]e will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1); 416.912(e)(1). Nor does a separate psychological assessment appear required. The regulations provide that a consultative examination may be ordered "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled." 20 C.F.R. §§ 404.1517, 416.917. There is ample evidence in the record regarding Croy's condition, and the ALJ, who ordered two separate consultative examinations of Croy, each of which noted depression and alcoholism and assessed his mental status, (R. 278-79, 310-12), cannot be faulted for not ordering a separate psychological assessment.

Considering the evidence in the administrative record as a whole, the court finds that the Commissioner's decision meets the substantial evidence standard. Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case; rather, the

10

court's role is to whether the Commissioner's decision is supported by substantial evidence. Considering that the Supreme Court has defined substantial evidence not to be a large or considerable amount of evidence, more than a mere scintilla and somewhat less than a preponderance, Pierce v. Underwood, 487 U.S. at 565, Richardson v. Perales, 402 U.S. at 401, it is clear that the evidence in the record in this case, manifest in the treatment notes of Dr. Lee and the consultative examinations of Drs. Newell and Wilson, meets the substantial evidence standard.

In affirming the final decision of the Commissioner, the court does not suggest that Croy is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Croy's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This 31st day of January, 2008.

_____
Michael F. Urbanski
United States Magistrate Judge